IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01822-NRN

C.M.G.,

Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

Defendant.

**OPINION AND ORDER**

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff C.M.G.[1] was not disabled for purposes of the Social Security Act. AR[2] 30. Plaintiff has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a United States Magistrate Judge under 28 U.S.C. § 636(c). Dkt. #12.

**Standard of Review**

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,*

---

[1] Pursuant to D.C.COLO.LAPR 5.2, "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. Dkts. ##11, and 11-1 through 11-9.

500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

## Background

At the second step of the Commissioner's five-step sequence for making determinations,[3] the ALJ found that Plaintiff has the severe impairments of scoliosis of

---

[3] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

the lumbar spine, obesity, anxiety, and depression. AR 17–18. The ALJ deemed non-severe Plaintiff's additional impairment of arthritis of the hands and knees. *Id.* at 18.

The ALJ determined at step three that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the regulations. AR 18–19. After concluding that Plaintiff does not have an impairment or combination of impairments that meets the severity of the listed impairments, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> light work, as defined in 20 CFR 404.1567(b) and 416.967(b) except can occasionally bend, squat, knew; no ladders or scaffolds; no hazardous work areas; occasional dealing with coworkers; SVP 2 or less jobs that are only rote, repetitive tasks.

AR 21.

The ALJ found that Plaintiff is unable to perform her past relevant work as a barista, "owner of childcare," restaurant sales manager, receptionist, filed representative for food program, server, bartender, and store manager. AR 29. Considering Plaintiff's age, education, work experience, and RFC, and in light of the testimony of a vocational expert ("VE"), the ALJ determined that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, including power screw driver operator or nut runner, produce assembler, and cafeteria attendant. AR 30.

## **Analysis**

Plaintiff argues that the ALJ incorrectly determined that she was not disabled because he did not properly evaluate the medical opinion evidence. Specifically, Plaintiff argues that the ALJ "did not have valid reasons" for finding the opinion of Dr. Moore, the consultative examiner, less persuasive than that of the State agency physician, and the

opinions of Dr. Thompson and Dr. Benson, the psychological examiner and Plaintiff's treating health provider, respectively, less persuasive than those of the state agency psychologists. For the reasons set forth below, the Court disagrees.

## I. Evaluation of Medical Opinion

Effective March 27, 2017, the regulations governing the procedures and standards for evaluating evidence, including medical source opinions, changed. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Because Plaintiff filed her claim in 2018, the ALJ applied the revised regulations.

Under the new regulations set forth in 20 C.F.R. §§ 404.1520c and 416.920c, the Commissioner is to consider the persuasiveness of each medical source's opinions using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, frequency of examinations; purpose and extent of treatment relationship, and examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors in evaluating persuasiveness are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). For supportability, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone v. Saul*, 1:20-cv-00261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)). Consistency, on the other hand, "is an all-encompassing inquiry focused on how well a medical source is supported, or not

4

supported, by the entire record." *Id*. (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)). The ALJ must explain his approach with respect to these factors when considering a medical opinion, but he is not required to expound on the remaining three unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(2)–(3), 416.920c(b)(2)–(3).

Contrary to Plaintiff's suggestion (*see, e.g.*, Dkt. #13 at 7, 22) the ALJ need not weigh the medical opinions against each other or provide "specific, valid" or "specific and legitimate" reasons for rejecting a medical opinion. Indeed, as the Ninth Circuit recently articulated:

> Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (internal citations omitted).

However,

> [e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate . . . how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id*. § 404.1520c(b)(2)

*Id.* Thus, under the appropriate standard, the Court considers only whether the ALJ's findings about the persuasiveness of medical opinions of Dr. Moore, Dr. Benson, and Dr. Thompson are supported by substantial evidence.

5

## II. Dr. Moore's Medical Opinion

Dr. Moore evaluated Plaintiff on February 8, 2020. Based on his examination, Dr. Moore opined that in an eight-hour workday Plaintiff can sit and stand for two to four hours each, walk for about two hours, frequently lift up 10 pounds, and occasionally lift up to 15 pounds. AR 582–83. Further, he opined that Plaintiff could occasionally bend, stoop, squat, crouch, or crawl. AR 583.

The ALJ found this opinion "not fully persuasive." AR 27. In so doing, he explained:

> [Dr. Moore's] conclusions are based on a one-time examination of the claimant and not entirely consistent with the record overall. The evidence supports exertional, postural and environmental limitations. However, the record supports the claimant is generally capable of a reduced range of light work as discussed above. The claimant had improvement in her chronic pain following her surgical intervention and her exams showed generally stable findings. She had some tenderness and limited motion of the spine and SI joints on exam, but otherwise had no significant neurological deficits. She generally had normal motor strength, intact sensation and normal gait without the use of an assistive device to ambulate.

AR 27. Thus, in fashioning the RFC to allow a reduced range of light work,[4] the ALJ found Plaintiff's physical limitations were less restrictive than those opined by Dr. Moore. Indeed, if completely accepted by the ALJ, Dr. Moore's limitations

---

[4] Under 20 C.F.R. § 404.1567(b):

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

would conflict with a limitation of "light work." For example, where Dr. Moore limited Plaintiff to occasionally lifting 15 pounds, the ALJ found that Claimant can lift no more than 20 pounds, and can frequently lift or carry objects weighing up to 10 pounds. Further, where Dr. Moore opined that Plaintiff can only sit, stand, or walk for about two hours in a regular workday, the ALJ agreed with the state agency medical consultants' opinion that Plaintiff could stand and or walk for about six hours, and sit for about six hours in an eight-hour workday.

Plaintiff complains that the ALJ improperly found Dr. Moore's medical opinion as to the exertional limitations unpersuasive in part because Dr. Moore examined Plaintiff only once. Plaintiff argues that it was illogical for the ALJ to discount Dr. Moore's opined limitations due to the short treating relationship but find the state agency psychologists' more permissive limitations generally persuasive even though the never saw Plaintiff. This argument falls flat. Under the revised regulations, a medical source's relationship with the claimant is no longer given greater weight, but it is still relevant to assessing the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(c)(3). Here, though the state consultative examiners never physically examined Plaintiff, they reviewed medical records spanning several years. The ALJ in entitled to find this type of longitudinal study more persuasive than a single examination, particularly where, as Defendant points out, Plaintiff presented "drastically differently [at] examinations related to obtaining benefits than she did with her treatment providers." (*See* Dkt. #16 at 17–18.)

Further, Plaintiff's objections that the ALJ's reasons for not completely accepting Dr. Moore's opinion on Plaintiff's physical limitations were not "valid" and "specific" are

meritless, as that is not the applicable standard. Instead, all that is required is that the ALJ's findings are supported by substantial evidence. Here, they are.

While the ALJ's analysis is somewhat minimalist, the court "cannot insist on technical perfection" in reviewing the ALJ's decision. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court finds that the ALJ complied with the regulations. The ALJ provided a detailed discussion of what the opining expert, Dr. Moore, himself considered. *See* AR 25–26. The ALJ determined that some of Dr. Moore's findings, such as certain exertional, postural, and environmental limitations, were supported by his examination, which showed some tenderness, but no significant neurological deficits. This determination is supported by substantial evidence. Indeed, Dr. Moore found that Plaintiff "appeared comfortable while seated without pain mitigating mannerisms." Though she had appeared uncomfortable moving on and off the exam table, she "mobilized unaided throughout the exam with adequate effort." She did not require an assistive device to ambulate. Dr. Moore also noted that Plaintiff reported that she could perform personal care and activities of daily living, including cooking and cleaning, getting her son ready for school, and picking up the house during the day. AR 25–26.

As to consistency,[5] the ALJ determined that, on the whole, the record demonstrates that Plaintiff is capable of performing work with less restrictive physical

---

[5] Though the ALJ stated that the "record supports" less severe limitations, it is clear from context that the ALJ was making a consistency finding—i.e., that Dr. Moore's opinion was inconsistent with other evidence in the record. "Although the ALJ's meaning here is clear from context, to avoid confusion in future cases, ALJs should endeavor to use these two terms of art—'consistent' and 'supported'—with precision." *Woods*, 32 F.4th at 793 n.4.

limitations than what Dr. Moore opined. The ALJ explained what in the record supported that conclusion. The ALJ discussed Plaintiff's medical history in significant detail. *See* AR 22–27. Though Plaintiff had some tenderness and limited motion of the spine, there were no significant neurological deficits, and she experienced overall improvement in her chronic pain after surgical intervention. AR 27. The ALJ found Dr. Moore's opinion inconsistent with the record because of Plaintiff's reports of improvement with her chronic pain, generally stable status, and normal strength and gait. Put differently, the ALJ found that the longitudinal record was more consistent with his RFC (as informed by the other medical opinions he found more persuasive), rather than the restrictive exertional limitations suggested by Dr. Moore. This is a legitimate basis for discounting a medical opinion. *Cf.* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *Pisciotta*, 500 F.3d at 1077 (holding that ALJ properly discounted medical evidence that was inconsistent with the record as a whole).

Ultimately, the ALJ did not ignore or deny Plaintiff's physical conditions. He agreed that she had several severe physical impairments, he just did not find them as debilitating as Dr. Moore. This is the type of determination that the ALJ is empowered to make, and so long as it is supported by substantial evidence, as it is in this case, it should not be disturbed, even if the Court or a different ALJ may have weighed things differently.

The Court concludes that the ALJ's determination that Dr. Moore's opinion was "not fully persuasive" is supported by substantial evidence. The ALJ, therefore, committed no error when the RFC did not account for the more severe limitations contained in Dr. Moore's opinion.

### III. Dr. Benson

Dr. Benson examined Plaintiff on August 2, 2019. He opined that Plaintiff had a "mild to moderate impairment in understanding, memory, concentration and memory as well as moderate to marked impairment in social interactions." AR. 28.

The ALJ found this opinion "unpersuasive." *Id.* He explained:

> [Dr. Benson's] conclusions were based on a one-time examination of the claimant and are not supported by the longitudinal record. The claimant's treatment records and mental status exams fail to support such extensive limitations. The evidence does not support more than moderate impairment in sustained attention and concentration as well as no more than moderate impairment in interacting with others as discussed above. The claimant presented for routine treatment of anxiety, depression and chronic pain. However, her condition was generally improved with medication management and psychotherapy. Her mental status exams were generally within normal limits and she reported that she was generally stable on medications.

AR 28.

This finding, too, is supported by substantial evidence. The ALJ provided a detailed summary of Plaintiff's appointment with Dr. Benson, AR 25, and otherwise provided an extensive account of Plaintiff's mental health records, which the ALJ found inconsistent with Dr. Benson's opinion. The ALJ noted that Dr. Benson saw Plaintiff only one time but, as previously explained, this is not an inappropriate basis for discounting a medical opinion where the longitudinal record paints a different picture of Plaintiff's symptoms over time. Indeed, the ALJ explained that Dr. Benson's opinion that Plaintiff had up to a moderate impairment in understanding, memory, and concentration, and up to a marked limitation in social interactions, did not comport with the longitudinal record, which

showed that Plaintiff was improved with medication and psychotherapy, and that her mental status exams were generally within normal limits. AR 28.

Plaintiff reported various increases and decreases in her symptoms of depression and anxiety throughout 2018 and 2019, often reporting that her symptoms worsened when she stopped taking medication but improved when she resumed it. AR 23–24. In June 2019, Plaintiff was admitted to the hospital for suicidal thoughts and depression. AR 24. After adjusting her medication, she reported feeling better and was looking forward to discharge. She denied further suicidal ideation. AR 25. During a routine psychotherapy appointment in July 2019, she reported ongoing PTSD and anxiety, but reported that her mood and depression were stable. In August 2019, at her appointment with Dr. Benson, she reported that her medications were helping with her depression and anxiety, and described her social activities, which included monthly social time with friends and spending time with her next-door neighbor. Dr. Benson reported that he was able to easily establish rapport with Plaintiff, who was friendly and polite. Dr. Benson noted that she was distracted by anxiety and depression, but that she was able to repeat all five words during the memory test and could perform simple subtraction problems in her head.

After her visit with Dr. Benson, in February through August 2020, Plaintiff presented for routine psychotherapy visits where she shared "similar complaints of anxiety and depression with chronic pain." Later, in August and October 2020 Plaintiff reported that she was tolerating medication well, and that her depression and anxiety were well controlled with no issues. AR 26.

11

As with Dr. Moore's opinion, the ALJ did not ignore Plaintiff's mental health symptoms. The record reveals a detailed discussion of Plaintiff's fluctuating symptoms, and a determination that Plaintiff's condition improved after surgical intervention to address her back pain, and her mental health continued improving with routine psychotherapy visits and medication. Overall, the ALJ found that "the record fails to show significant complications or recurrent exacerbations of the claimant's mental impairments covering the relevant period." AR 22. Further, she appeared "responsive to medication adjustments and psychotherapy" and her "conditions appeared relatively stable and controlled with prescribed treatment." *Id.* Thus, the Court will not disturb the ALJ's finding that the record supported only moderate limitations in interacting with others, and not the more extensive limitations opined by Dr. Benson.

**IV. Dr. Thompson**

Dr. Thompson served as Plaintiff's treating mental health provider for over two years. In July 2018, Dr. Thompson noted that Plaintiff was "smart and able to understand the issues at hand" and that she "was able to participate in developing solutions in identifying resources." In July 2019, she opined that Plaintiff was not employable at that time, nor in the foreseeable future. *Id.* Notably, this was shortly after Plaintiff had been hospitalized for suicidal ideation. One year later, in October 2020, Dr. Thompson found that Plaintiff had:

> slight to moderate limitations in understanding and memory; generally moderate to marked limitations in sustained concentration and persistence; and slight to moderate limitations in social interaction and adaptation. She found the claimant would be off task more than 30 percent of the work week; and would miss three or more days per month.

12

*Id.*

> The ALJ found Dr. Thompson's opinion "unpersuasive."
>
> Dr. Thompson's conclusions are not supported by the overall medical record showing the claimant had some improvement and stabilization of her symptoms with prescribed treatment. She reported that her anxiety and depression were generally controlled with medications and she was doing well. The evidence overall, including treatment records and objective findings, fail to support such extensive limitations. Additionally, Dr. Thompson even noted that the claimant was smart and able to understand the issues at hand and she was able to participate in developing solutions and identifying resources. Dr. Thompson noted that the claimant demonstrated resourcefulness in dealing with difficult situations and she showed commitment to creating changes and willingness to try new things.

AR 28.

The Court already discussed Plaintiff's longitudinal mental health record when discussing Dr. Benson's opinion and will not repeat it here. The ALJ's decision to discount Dr. Thompson's limitations based on inconsistency with the overall medical record is supported by substantial evidence.

## Conclusion

The Court concludes that the ALJ's determinations that Dr. Moore, Dr. Thompson, and Dr. Benson's medical opinions regarding the scope of Plaintiff's physical and mental limitations were not persuasive are supported by substantial evidence. Thus, the resulting RFC is not in error, and the Court will not disturb the ALJ's finding that Plaintiff is not disabled within the meaning of the Social Security Act. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1500 (10th Cir. 1992). ("As long as substantial evidence supports the ALJ's determination, the [Commissioner's] decision stands.").

Accordingly, the Commissioner's decision is **AFFIRMED.** Plaintiff's Complaint (Dkt. #1) is **DISMISSED**.

Dated this 19th day of August, 2022.

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge